UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

In re:

NORGATE METAL INC.,

Debtor in a Foreign Proceeding.

Chapter 15

Case No. 11-_____

---

## PETITION FOR RECOGNITION OF CANADIAN PROCEEDING UNDER 11 U.S.C. § 1515

Petitioner Ernst & Young Inc. ("E&Y"), as a person appointed by the Quebec Superior Court (Commercial Division) (the "Canadian Court") pursuant to Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "CCAA") to serve as Monitor and authorized by the Canadian Court to act as foreign representative of the Quebec company Norgate Metal Inc. (the "Debtor"), respectfully submits the Official Form Petition and this Petition for Recognition of Canadian Proceeding Under 11 U.S.C. § 1515 (together, the "Petition") pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 1501 *et seq.*, for an order of this Court pursuant to § 1517 of the Bankruptcy Code recognizing the Debtor's proceeding before the Canadian Court (the "Canadian Proceeding") as a foreign main proceeding and accordingly granting relief pursuant to Bankruptcy Code § 1520, and granting additional relief pursuant to Bankruptcy Code § 1521 as more fully set forth below.

### BACKGROUND

1. The pertinent facts and documents relevant to this matter are set forth in the attached Declaration In Support of Ernst & Young Inc.'s: (i) Petition for Recognition of Canadian Proceeding Under 11 U.S.C. § 1515; and (ii) *Ex Parte* Motion for Provisional Relief Pursuant to §§ 105(a) and 1519 of the Bankruptcy Code and Request for Hearing, executed by

Mr. Luc Poulin, CA, CIRP, a Partner of Petitioner E&Y as Monitor and authorized foreign representative of the Debtor (the "Poulin Declaration").[1]

**The Debtor:**

2. The Debtor is a corporation governed by the Business Corporations Act, R.S.Q., ch. S-31.1, engaged in the engineering, manufacturing and installation of steel based metal structures and related metal work products. It currently employs approximately eighty (80) people primarily at its principal place of business and manufacturing facilities in the city of La Guadeloupe, Quebec, Canada and maintains administrative offices in St. Georges, Quebec, Canada. Thus, all of the Debtor's administrative and manufacturing operations are performed in Canada. Additionally, approximately 20% of Debtor's sales and installation business is performed in Canada. (Poulin Declaration at Par. 11).

3. The Debtor supplies and installs material at both low rise and complex projects requiring between 50 and 4,000 tons of steel. Its business is segmented into two (2) broad categories:

   a) <u>Engineering, manufacturing and installation of steel based metal structures:</u> The Debtor provides engineering, manufacturing and installation of steel based metal structures pursuant to drawings prepared by the architects and engineers for a variety of industrial, commercial and institutional purposes;

   b) <u>Engineering, manufacturing and installation of steel based metal structure related products:</u> The Debtor also provides services for existing structures which require the engineering, manufacturing and installation of steel based metal products in existing structures, such as stairs, protective structures and garage doors. These services account for approximately 2% of Norgate's revenue.

(Poulin Declaration at Par. 13).

---

[1] All capitalized terms not defined herein shall have the meanings ascribed by the Poulin Declaration.

**The Financial Difficulties of the Debtor:**

4. The Debtor has incurred some financial difficulties including having to replace a subcontractor at a project located in New York State with another subcontractor at a significantly increased rate, which resulted in a loss of at least $2,450,000 for the Debtor. (Poulin Declaration at Pars. 15-21).

5. Additionally, between January 2010 and April 2011 the price of steel increased from approximately $120 per metric ton to $135 per metric ton and the value of the Canadian currency compared to the American currency increased from approximately $0.95 to approximately $1.05. (Poulin Declaration at Par. 22).

6. These sharp increases hindered the Debtor's ability to derive a profit from its operations as steel is the raw material at the core of the Debtor's business. Approximately, eighty (80%) percent of the Debtor's revenues are from sales on the American market, which are paid in American currency, while approximately fifty (50%) percent of its expenses are paid in Canadian currency. As such, the appreciation of the Canadian currency and the corresponding depreciation of the American currency significantly reduced Norgate's revenues, while at the same time increasing its expenses. (Poulin Declaration at Par. 26).

7. The combined effects of the sharp increase in the price of steel, the strength of the Canadian currency and the corresponding depreciation of the American currency have resulted in a loss of approximately $2,000,000 since January 2011. (Poulin Declaration at Par. 27).

8. As is typical in the construction industry, the Debtor's obligations under its construction contracts must often be guaranteed by a bonding insurance company which guarantees the timely execution of the Debtor's obligations in favor of its client as well as the payment of the labor and materials supplied to the project. (Poulin Declaration at Par. 28).

9. On June 22, 2011, La Garantie, the Debtor's bonding insurer for its American clients, informed the Debtor in writing that it would not bond new projects (although bonds remain in force on existing projects) pending the receipt of the latest audited financial statements. (Poulin Declaration at Pars. 29-30).

10. Despite its best efforts, the current financial situation of the Debtor has made it difficult to secure an alternative bonding company for projects in the Untied States, which significantly hinders the debtor's ability to bid on new projects. (Poulin Declaration at Par. 32).

**The Canadian Proceeding:**

11. In light of the above detailed financial difficulties, the Debtor is in the process of restructuring its operations, and on November 22, 2011, the Debtor filed a Petition for the Issuance of an Initial Order Pursuant to Sections 4, 5, and 11 of the *Companies' Creditors Arrangement Act* (R.S.C., 1985 c. C-36) with the Canadian Court. (Poulin Declaration at Par. 4.)

12. Thereafter, on November 23, 2011, the Canadian Court issued its Initial Order (the "Initial Order") pursuant to Sections 4, 5 and 11 of Canada's *Companies Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"). (Poulin Declaration at Par. 5). A copy of the Initial Order is attached as Exhibit A to the Poulin Declaration.[2]

13. Among other things, the Initial Order:

a) authorized the Debtor to continue to carry on its business and financial affairs in a manner consistent with the commercially reasonable preservation thereof. (Initial Order at Par. 11);

b) ordered the Debtor to file with the Canadian Court and submit to their creditors one or more plans of compromise or arrangement under the CCAA. (Initial Order at Par. 7);

---

[2] The Initial Order has been extended through and including February 9, 2012. A copy of the order extending the Initial Order is attached as part of Exhibti A to the Poulin Declaration.

- 4 -

c) stayed commencement or continuation of actions against the Debtor and prohibited any action or execution against assets, rights or undertakings of the Debtor or that would affect the Debtor's business operations and activities during a defined period. (Initial Order at Par. 8);

d) appointed E&Y as Monitor pursuant to the CCAA and authorized E&Y to act as foreign representative of the Debtor in any proceeding outside of Canada. (Initial Order at Par. 28(l));

e) declared that the Monitor, with the consent of the Debtor, may commence a proceeding in the United States under Chapter 15 of the United States Bankruptcy Code. (Initial Order at Par. 57);

f) declared that the Initial Order and all other orders in the Canadian Proceeding shall have full force and effect in Canada. (Initial Order at Par. 56); and

g) requested U.S. Courts to act in aid of, and to be complementary to, the Canadian Court in carrying out the terms of the Initial Order. (Initial Order at Par. 58).

*See* Exhibit A to the Poulin Declaration.

14. The Initial Order protects the Debtor and/or its property (wherever located) from unilateral action by creditors. By this Petition, E&Y seeks comparable protection with respect to potential creditor actions and interference with property of the Debtor located in the United States. (Poulin Declaration at Par. 10).

15. The Debtor has consented to the filing of these Chapter 15 cases. (Poulin Declaration at Par. 7 and Exhibit B attached thereto).

**The Debtor's Assets and Creditors:**

16. The Debtor's un-audited books and records, including but not limited to their interim financial statements for the eleven month period ending on September 30, 2011, reflect that the vast majority of the Debtor's hard assets are in Canada, and that the book value of the Debtor's Canadian assets is $4,200,000.00 (Canadian Dollars) (approximately $4,041,037.99 in U.S. Dollars). (Poulin Declaration Pars. 11, 12 and 35).

17. Approximately eighty (80%) percent of the Debtor's sales and installation business is performed in the United States. The Debtor's U.S. assets consist of contracts for the manufacturing and installation of steel structures at construction sites in New England (the "U.S. Contracts). (Poulin Declaration Par. 34).

18. The Debtor has creditors in Canada and the United States with approximately four times as many in number and twice as many in amount located in Canada. (Poulin Declaration Par. 35). A complete description of the Debtor's creditors is set forth at Paragraph 35 of the Poulin Declaration.

## JURISDICTION AND VENUE

19. This Court has jurisdiction to hear and determine cases commenced under the Bankruptcy Code and all core proceedings arising thereunder pursuant to 28 U.S.C. §§ 157 and 1334.

20. Recognition of foreign proceedings and other matters under Chapter 15 of the Bankruptcy Code are expressly designated as core proceedings pursuant to 28 U.S.C. §157(b)(2)(P).

21. Venue of this proceeding is proper in this judicial district, pursuant to 28 U.S.C. §1410, as the Debtor has assets and property present in this district.

## ARGUMENT AND ANALYSIS

### POINT I

### This Case Concerns a Foreign Proceeding

22. Bankruptcy Code section 101(23) provides in pertinent part, as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign

- 6 -

court, for the purpose of reorganization or liquidation. 11 U.S.C. §101(23).

23. The Initial Order in the Canadian Proceeding and the plan of arrangement contemplated thereby seek adjustment of debt and the restructuring of the Debtor's liabilities under the supervision of the Canadian Court. It is a collective judicial proceeding in a foreign country (Canada) under a law (the CCAA) relating to the adjustment of debts in which assets and affairs of the Debtor are subject to control or supervision by a court for the purpose of restructuring such debts. (Poulin Declaration at Par. 8). Accordingly, this Chapter 15 case concerns a foreign proceeding within the meaning of Bankruptcy Code § 101(23).

24. Since the passage of Chapter 15, a number of foreign proceedings have been recognized by United States Bankruptcy Courts in this Circuit. *See* Safe Harbor Bank, Ltd., Chapter 15 Case No.: 11-13629 (WCH) (Bankr. D. Mass. April 21, 2011); In re Bedminster International Limited, Chapter 15 Case No. 10-12476 (JNF) (Bankr. D. Mass October 19, 2010); and In re Trade Swiss AG, Chapter 15 Case No. 07-17518 (JBR) (Bankr. D. Mass February 28, 2008). Likewise, the Debtor here is entitled to recognition of the Canadian Proceeding.

## POINT II

### Petitioner E&Y is a Foreign Representative

25. Paragraph 28(l) of the Initial Order provides that E&Y, as Monitor is authorized to act as the "foreign representative" of the Debtor. This is within the meaning of Section 101(24) of the Bankruptcy Code, which defines a "foreign representative" in pertinent part as a "person or body … authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The express language of the Initial Order authorizes and empowers E&Y as Monitor to act as foreign representative, and, with the Debtor's prior

-7-

consent, to commence this Chapter 15 case in aid of the Canadian Proceeding. (Initial Order at Par. 57, attached as <u>Exhibit A</u> to the Poulin Declaration). As noted above, E&Y has obtained the Debtor's consent to commence these proceedings. (Poulin Declaration at Par. 7; *see also* Debtor's Consent to Commencement of Chapter 15 Case, attached as <u>Exhibit B</u> to the Poulin Declaration).

## POINT III

### This Case Was Properly Commenced

26. This Chapter 15 case was properly and duly commenced in accordance with Bankruptcy Code §§ 1504 and 1515 by the filing of this Petition, accompanied by all of the documents and information required by §§ 1515(b) and (c), including: (i) a certified copy of the Initial Order evidencing the existence and purposes of the Canadian Proceeding and expressly appointing E&Y as Monitor and authorizing E&Y to act as the Debtor's foreign representative outside of Canada, (ii) a statement identifying all foreign insolvency proceedings with respect to the Debtor that are known to E&Y (there are none other than the Canadian Proceeding); and (iii) and a copy of the Debtor's consent to the commencement of these Chapter 15 proceedings as well as a disclosure statement pursuant to Fed. R. Bankr. P. 1007(a)(4). In light of the foregoing and because the Court is entitled under § 1516(b) of the Bankruptcy Code to presume the authenticity of the Initial Order, the requirements of § 1515 of the Bankruptcy Code have been met.

## POINT IV

### The Canadian Proceeding Should Be Recognized As A Foreign Main Proceeding

27. The Bankruptcy Code provides that a foreign proceeding for which Chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. 11 U.S.C. § 1517(b)(1). The

Bankruptcy Code further provides that, in the absence of evidence to the contrary, the debtor's registered offices are presumed to be the center of the debtor's main interests. 11 U.S.C. § 1517(c).

28. Canada is the location of the Debtor's registered offices and its principal place of business. (Poulin Declaration at Par. 12). The Canadian Proceeding is pending in the country of the Debtor's main interests and constitutes a "foreign main proceeding" as defined by Section 1502(4) of the Bankruptcy Code. Accordingly, this Court should enter an order recognizing the Canadian Proceeding pursuant to Section 1517 of the Bankruptcy Code.

29. Recognizing the Canadian Proceeding would not be manifestly contrary to the public policy of the United States under § 1506 of the Bankruptcy Code, as the book value of the Debtor's Canadian assets total $4,200,000.00 (Canadian Dollars) (approximately $4,041,037.99 in U.S. Dollars), all of the Debtor's employees are based in Canada, most of the Debtor's creditors are located in Canada, and the Debtor's registered offices and production facilities are located in Canada while the Debtor does not maintain offices in the United States. (Poulin Declaration at Par. 11, 12, 33 and 35). Granting such recognition is in accord with the United States public policy respecting foreign proceedings as set forth in Chapter 15 of the Bankruptcy Code and in accordance with Paragraph 58 of the Initial Order which requested that U.S. Courts act in aid of, and be complementary to the Canadian Court in carrying out the terms of the Initial Order.

## POINT V

### The Debtor's U.S. Property Including Its U.S. Contracts Should Be Treated Consistently With The Orders In The Canadian Proceeding

30. If creditors or other parties-in-interest interfere with the Debtor's assets, property or proceeds thereof located in the United States (the "U.S. Property"), including the Debtor's U.S. Contracts, as defined herein, the Canadian Proceeding will be disrupted as the

continuation and payment of those contracts performed in the United States is integral to the Debtor's business plan. Any disruption or interference with the Debtor's U.S. Property including its U.S. Contracts would cause irreparable harm to the Debtor, its creditors and other parties-in-interest in the Canadian Proceeding. Even the threat of disruption, as well as the legal cost of defending such actions, would have a severe and adverse impact on the Canadian Proceeding. (Poulin Declaration Par. 36).

31. Absent provisional relief pending this Court's determinations with respect to the relief sought by the Petition, U.S. creditors may seek tactical advantage through unilateral action, including acceleration of efforts to commence litigation, cancellation of contracts, set offs, withholding payment, or other legal process in whatever U.S. jurisdiction the creditor may choose. In addition, creditors may use U.S. litigation or unilateral action to avoid participation in the Canadian Proceeding, whose success depends upon the ability to adopt a unified plan covering the claims of all creditors. (Poulin Declaration Par. 37).

32. As the Canadian Court has already issued the Initial Order prohibiting the continuation or commencement of any action against the Debtor's assets, rights and undertakings wherever located and prohibiting actions affecting the Debtor's business operations and activities, prohibiting interference with the Debtor's U.S. Property including its U.S. Contracts will prevent conflict with the Canadian Proceeding. (Poulin Declaration Par. 38).

## RELIEF REQUESTED

33. E&Y, as Monitor, respectfully requests entry of an order, in substantially the form attached hereto as *Exhibit "A"* (the "Proposed Recognition Order"), granting the following relief:

a) Recognition of the Canadian Proceeding as a foreign main proceeding as defined in Section 1502(4) of the Bankruptcy Code;

b) Further relief as authorized by Section 1521 of the Bankruptcy Code, including, but not limited to the following:

　　i. Staying the commencement or continuation of any action or proceeding concerning the assets, rights, obligations or liabilities of the Debtor, including any action or proceeding against E&Y as Monitor, to the extent such actions are not stayed under Section 1520(a);

　　ii. Staying execution against or cancellation of the Debtor's U.S. Contracts to the extent such executions and/or cancellations are not stayed under Section 1520(a) of the Bankruptcy Code;

　　iii. Suspending the right of any third party to transfer or otherwise dispose of or set off against any assets of the Debtor to the extent this right has not been suspended under Section 1520(a) of the Bankruptcy Code; and

　　iv. Providing for the examination of witnesses, the taking of evidence, the production of documents, or the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtor.

c) Awarding E&Y as Monitor, and the Debtor, such other and further relief as this Court may deem just and proper.

**HEARING DATE AND NOTICE**

34. E&Y, as Monitor and as the foreign representative of the Debtor, requests that the Court set the date for a hearing on its request for recognition (the "Recognition Hearing"). If no objections are filed by the date set by the Court, E&Y requests that the Court enter the

Proposed Recognition Order recognizing the Canadian Proceeding as a foreign main proceeding without a hearing.

35. Once a hearing date has been set by the Court, notice will be given by sending by first-class U.S. Mail a Notice of Hearing (the "Notice"), in substantially the form attached hereto as *Exhibit "B"*, with copies of the Petition and the Poulin Declaration to all of the Debtor's known creditors (the "Creditors") at their last known address, to the Office of the United States Trustee for the District of Massachusetts and to the United States Securities and Exchange Commission.

36. Notice will be sent so as to provide the U.S. Creditors with at least twenty-one (21) days notice of the Recognition Hearing, pursuant to Rule 2002(q) of the Interim Bankruptcy Rules. It is respectfully submitted that such notice and service is reasonable and proper under the circumstances.

## CONCLUSION

37. E&Y, in its capacity as Canadian Court's appointed Monitor to the Debtor and as the Debtor's authorized foreign representative, is entitled to the relief requested because all of the statutory elements for recognition of the Canadian Proceeding under Bankruptcy Code Section 1517(a) have been satisfied as a matter of law. Specifically:

a) The Canadian Proceeding is a foreign main proceeding under § 1502(4) of the Bankruptcy Code;

b) Recognition of the Canadian Proceeding would not be contrary to public policy under § 1506 of the Bankruptcy Code;

c) E&Y is a court-appointed Monitor and is duly authorized by the Canadian Court to represent the Debtor in connection with this proceeding; and

d) E&Y has complied with all of the requirements of § 1515 of the Bankruptcy Code and Interim Bankruptcy Rule 2002(q).

38. The documents and other evidence accompanying the Petition meet the requirements of §§ 1514 and 1515 of the Bankruptcy Code with respect to the Debtor. No further showing regarding the nature of the Canadian Proceeding or other matters is required.

**WHEREFORE**, E&Y respectfully requests that this Court enter an Order, in substantially the form of the Proposed Recognition Order (attached hereto as *Exhibit "A"*), approve the Notice of Hearing (attached hereto as *Exhibit "B"*), and grant such other and further relief as may be just.

Dated: January 4, 2012
     Albany, New York

Respectfully submitted:

DEILY, MOONEY & GLASTETTER, LLP

    /s/ Stacey Metro
Stacey Metro, Esq. (Mass. BBO #661773)
Joann Sternheimer, Esq. (admission *pro hac vice* pending)
8 Thurlow Terrace
Albany, New York 12203
(518) 436-0344
(518) 436-8273 (Facsimile)
smetro@deilylawfirm.com

*U.S. Counsel for Ernst & Young Inc.,*
*in its capacity as Monitor and foreign*
*representative for the Debtor*